# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

WRENETTA BOWLING,      )
                       )
        **Plaintiff,**    )
                       )
**v.**                   )      **Case No. CIV-14-547-JHP-SPS**
                       )
**CAROLYN COLVIN,**    )
**Acting Commissioner of the Social**  )
**Security Administration,**    )
                       )
        **Defendant.**    )

## REPORT AND RECOMMENDATION

The claimant Wrenetta Bowling requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born July 11, 1963, and was fifty years old at the time of the most recent administrative hearing (Tr. 544). She attended school up to the ninth grade while taking special education classes, then obtained her GED in 1992, and has worked as a fast food worker, resident care aide, baker's helper, and cashier (Tr. 161, 534, 546). The claimant alleges that she has been unable to work since December 26, 2008 due to bipolar disorder, paranoid schizophrenia, anxiety, carpal tunnel syndrome, and back problems (Tr. 154).

## Procedural History

The claimant applied on January 5, 2009 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Trace Baldwin held an administrative hearing and determined the claimant was not disabled in a written opinion dated July 16, 2010 (Tr. 17-31). The Appeals Council denied review, but this Court reversed the decision of the Commissioner on appeal in Case No. CIV-11-283-FHS-SPS, and remanded the case for further proceedings with instructions to properly identify work the claimant could perform (Tr. 611-623). In the intervening time, the claimant filed a subsequent application for disability insurance benefits and supplemental security income on October 5, 2011 and a favorable determination was issued, finding the claimant was disabled beginning August 13, 2011 (Tr. 625-626). On remand, ALJ Bernard Porter then conducted a second administrative hearing and again determined that, for the closed

3

period from December 26, 2008 through August 12, 2011, the claimant was not disabled

(Tr. 518-536). The Appeals Council denied review as to the closed period, so ALJ

Porter's opinion represents the Commissioner's final decision for purposes of this appeal.

*See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that

the claimant retained the ability to perform light work as defined in 20 C.F.R.

§§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry 20 pounds occasionally and ten

pounds frequently, and stand/walk/sit for 6 hours in an 8-hour workday, and lift/carry as

much as she could push/pull, but he imposed the additional physical limitations of:

occasionally use foot and hand controls, reach overhead, kneel, and climb ramps and

stairs; never climb ropes, ladders and scaffolds, or crawl; frequently handle, finger, feel,

balance, stoop, and crouch. Additionally, the ALJ found that the claimant should avoid

exposure to unprotected heights, moving mechanical parts, and temperature extremes,

and that she required a sit/stand option that allowed for a change in position at least one

time every thirty minutes, which would be a brief positional change lasting no more than

three to four minutes at a time. Finally, due to psychologically-based symptoms, the ALJ

determined that the claimant was limited to simple tasks and simple work-related

decisions, could have occasional interaction with supervisors and co-workers, but should

have no interaction with the public, and that she would be off task up to 10% of the

workday due to episodic symptomatology (Tr. 525). The ALJ concluded that although

the claimant could not return to her past relevant work, she was nevertheless not disabled

because there was work she could perform, *e. g.*, bakery worker, small products assembler, and bottling line attendant (Tr. 535).

## Review

The claimant contends[2] that the ALJ erred by: (i) improperly evaluating her credibility, (ii) failing to properly assess her RFC, (iii) failing to properly weigh a Medical Source Statement from her counselor, and (iv) failing to fully develop the record. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

ALJ Porter determined that the claimant had the severe impairments of mild carpal tunnel syndrome bilaterally status post right release, right shoulder impingement syndrome, lumbar disc disease, anxiety disorder, major depression, and schizoaffective disorder, and his written opinion reflects an extensive summary of all the medical evidence in the record (Tr. 521). The claimant testified at the first administrative hearing as to her mental impairments, including her treatment at Bill Willis Community Mental Health and Substance Abuse Center. Additionally, she testified that her physical impairments included back pain that was rated at a 16% overall impairment and that it was so severe that she could not drive long distances, as well as carpal tunnel syndrome that caused her hands to get numb and swell (Tr. 39-53).

The specific medical evidence relevant to this appeal reflects that Ms. Bargar completed a mental Medical Source Statement (MSS) of the claimant's ability to do

---

[2] The undersigned Magistrate Judge refers Plaintiff's counsel to Local Civ. R. 7.1(d) regarding length and format of briefs.

work, on two separate occasions – April 15, 2010 and May 27, 2011 (Tr. 457-459, 511-513).  In the 2010 MSS, Ms. Bargar indicated that the claimant was markedly limited in seventeen areas of functioning (all but two on the worksheet), and moderately limited in the remaining two (Tr. 457-458).  Additionally, she stated that the claimant's depression affected her life significantly and caused her to withdraw to herself and her home, that her concentration and focus were determined by her bi-polar symptomology, and that she was uneasy being around groups of any size or people she did not know (Tr. 459).  In the 2011 assessment, Ms. Bargar indicated that the claimant had sixteen marked limitations and three moderate ones – the change being that the ability to carry out very short and simple instructions was now a moderate limitation—but she made no written comments (Tr. 511-513).

Additionally, a Ms. Dry completed a mental MSS Assessment for the claimant on October 19, 2012 (Tr. 914-916).  She likewise indicated that the claimant had sixteen marked limitations and three moderate limitations (Tr. 914-915).  She further stated that the claimant suffered from anxiety disorder and major depression recurrent severe with psychotic features, as well as PTSD and personality disorder.  She indicated that the claimant's symptoms interfered with her ability to function daily in personal activities and her anxiety interfered with her ability to function effectively in the community (Tr. 916).

The claimant first contends that the ALJ erred in analyzing her credibility because "nowhere in the decision" did the ALJ provide his reasoning for failing to find the claimant credible.  *See* Docket No. 15, p. 11.  A credibility determination is entitled to

6

deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 527). Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) the claimant reported that she currently

7

weighed 185 pounds but usually weighed 135 pounds, but the record reflected weights of 174 and 169 pounds as early as November 2003; (ii) she reported she could only do housework in twenty-minute increments, walking for an hour caused severe pain, and she could only use her hands for twenty minutes, but in September 2008 the claimant reported a "funny" story about being in a tree cutting a branch away from an electric line; (iii) she reported going fishing every other weekend in January 2010; (iv) she testified she could only watch her granddaughter for twenty minutes, but was providing childcare for her December 2007; (v) in February 2009 the claimant reported working in the garden, caring for two dogs, and getting out more with a friend; (vi) she testified to audio/visual hallucinations and constant thoughts of suicide, but treatment notes reflect she repeatedly denied such symptoms; and (vii) she reported she could not afford medical treatment for her carpal tunnel syndrome, but the ALJ noted she could afford a half a pack to a full pack per day tobacco habit (Tr. 527-528). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, or that he failed to state his reasoning, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment because: (i) she was at an inpatient facility for her mental impairments in December 2008, (ii) she was consistently on medication for depression and the ALJ did not discuss its side effects, and (iii) she testified to ongoing numbness and tingling in her hand.

8

Additionally, she argues that the ALJ further erred in evaluating the opinion of the claimant's counselor, Ms. Beverly Bargar. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. As discussed below, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

In the most recent opinion, ALJ Porter extensively summarized the claimant's testimony from both administrative hearings, as well as her reports to various treating physicians and counselors (also discussed above in relation to the claimant's credibility) (Tr. 526-528). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Ms. Bargar here. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir.

2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact, (ii) whether the opinion is consistent with other evidence, (iii) the extent the source provides relevant supporting evidence, (iv) how well the source's opinion is explained, (v) whether claimant's impairment is related to a source's specialty or area of expertise, and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d).

Here, the ALJ provided a detailed discussion of both Ms. Bargar's opinions contained in the record from April 2010 and May 2011(Tr. 457-459, 511-513), as well as that of Ms. Dry from 2012 (Tr. 914-916), reciting the seventeen indicated marked limitation from the April 2010 Medical Source Statement (MSS), as well as the differences between it and the May 2011 and 2012 opinions, which were identical (Tr. 529-530). The ALJ then assigned little weight to Ms. Bargar's 2010 opinion because (i) it was apparently completed the first day Ms. Bargar met the claimant, (ii) Ms. Bargar only saw the claimant five times in over three years, and (iii) Ms. Bargar based her

finding on bi-polar symptomology, but the claimant did not have that diagnosis in the record (Tr. 529). Additionally, he found the opinion internally inconsistent because Ms. Bargar reported the claimant was uneasy around groups of people she does not know, but that she only had moderate limitations in traveling on public transportation; Ms. Bargar indicated a marked limitation with regard to socially appropriate behavior and adhering to basic standards of neatness and cleanliness, but the claimant was repeatedly noted to be appropriately groomed, casual, and clean; a January 2010 global assessment of functioning (GAF) score of 62 indicated no significant impairment in social or occupational functioning; and the claimant's medications were unchanged except for one that had been increased due to insomnia (Tr. 530). As to Ms. Bargar's second opinion, the ALJ afforded it diminished weight due to the length of time she counseled the claimant, the claimant's treating physician during this time noted the claimant had a good response to medication and mostly denied suicidal/homicidal ideation and hallucinations, and the claimant's consistent GAF score of 66 did not support disabling limitation (Tr. 530). *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard*, 379 F.3d at 949.

It is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300

(10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at \*5 (July 2, 1996).

But here, the ALJ's treatment of the medical evidence in this case meets these standards.

The undersigned Magistrate Judge finds that the ALJ specifically noted the various

findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any

limitations suggested in the medical record, *and still concluded* that she could perform

light work. When all the evidence is taken into account, the conclusion that the claimant

could perform light work is thus supported by substantial evidence.

Finally, the claimant contends that the ALJ failed to develop the record with

regard to her physical impairments, asserting without reference to any part of the record

that she clearly had physical impairments that were not treated or sufficiently addressed.

It is true that a social security disability hearing is nonadversarial and the ALJ bears

responsibility for ensuring that "an adequate record is developed during the disability

hearing consistent with the issues raised." *Henrie v. United States Department of Health

& Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*,

966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the

claimant's advocate[,]" but "the duty is one of inquiry and factual development. The

claimant continues to bear the ultimate burden of proving that she is disabled under the

regulations." *Id.* at 361 [citations omitted].

The essence of the claimant's appeal here is that the Court should re-weigh the

evidence and determine her RFC differently from the Commissioner, which the Court

simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001)

("The final responsibility for determining RFC rests with the Commissioner, and because

the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**